IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

CARLOS A. NICHOLAS,                    *
                                       *
        Plaintiff,                     *
                                       *
vs.                                    *    CIVIL ACTION 06-00484-BH-B
                                       *
MICHAEL J. ASTRUE,                     *
Commissioner of                        *
Social Security,                       *
                                       *
        Defendant.                     *

## REPORT AND RECOMMENDATION

Plaintiff Carlos A. Nicholas ("Plaintiff") brings this action seeking judicial review of a final decision of the Commissioner of Social Security denying his claim for period of disability, disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401 et seq., and 1381 et seq.  Oral argument took place on May 14, 2007.  Upon careful consideration of the administrative record, oral argument and the memoranda of the parties, it is **RECOMMENDED** that the decision of the Commissioner be **REVERSED** and **REMANDED**.

## I.  Procedural History

Plaintiff protectively filed applications for supplemental security income benefits and disability income benefits, respectively, on May 17, 2002 and May 21, 2002, alleging that he has been disabled since September 13, 2001, due to rheumatoid arthritis, deteriorating disks in his neck and swelling in his feet, knees and legs with constant pain.  (Tr. 228-235, 246-249,

256, 268, 392-401).  Plaintiff's applications were denied at the initial level and upon reconsideration.  (Id.)  He filed a timely Request for Hearing, and on February 19, 2003, Administrative Law Judge William J. Ragland ("ALJ Ragland") held an administrative hearing, which was attended by Plaintiff and his representative. (Id. at 212-227).  On August 12, 2003, ALJ Ragland issued an unfavorable decision finding that Plaintiff is not disabled.  (Id. at 192-202).  Plaintiff's request for review was denied by the Appeals Council ("AC") on August 14, 2006.  (Id. at 4-7, 190).  The ALJ's decision became the final decision of the Commissioner in accordance with 20 C.F.R. § 404.981.  (Id.)  The parties agree that this case is now ripe for judicial review and is properly before this Court pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## II.   Issues on Appeal

A.   Whether the ALJ erred by finding that Plaintiff retains the RFC for a full range of light work, and in doing so, failed to perform a function-by-function analysis under SSR 96-8p?

B.   Whether the ALJ erred by applying Rules 202.18 and 202.19 of the Medical-Vocational Guidelines?

## III.  Factual Background

Plaintiff was born on April 15, 1964 and was 38 years old at the time of the administrative hearing.  (Tr. 215).  Plaintiff has an 11th grade education and past relevant work ("PRW") as a mechanic and utility worker.  (Id. at 217-218, 220-222, 260, 265, 278-286, 299-300).  He reported that he last worked in September 2001, and

that he stopped working due to constant pain and physical problems – arthritis and a deteriorating disk – which cause pain and swelling in his feet, knees and hands and require him to spend his day changing positions. (Id. at 220, 222-224, 276-277). According to Plaintiff, he needs assistance caring for himself, cooking/preparing meals, performing household chores and yard work, shopping, loading/unloading groceries and driving – due to fatigue and discomfort. (Id. at 287-292). Plaintiff testified that he typically spends five hours per day lying down, due to feeling drowsy and "woozy" and to take pressure off of his feet. (Id. at 224-225). He further reported that swelling in his hands has made it difficult for him to grip. (Id. at 224-225).

Plaintiff's medications include Zoloft, Tylox, Celebrex and Prevacid. (Tr. 276, 292, 298, 301). According to Plaintiff, he takes Celebrex and soaks in hot water 2-3 times per day, for pain, but is never pain-free. (Id. at 223). Plaintiff also testified that Tylox, Zoloft and Celebrex make him drowsy. (Id. at 224).

## IV. Analysis

### A. Standard of Review

In reviewing claims brought under the Act, this Court's role is a limited one. The Court's review is limited to determining 1) whether the decision of the Secretary is supported by substantial evidence and 2) whether the correct legal standards were applied.

Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990).[1]  A court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner.  Sewell v. Bowen, 792 F.2d 1065, 1067 (11th Cir. 1986).  The Commissioner's findings of fact must be affirmed if they are based upon substantial evidence. Brown v. Sullivan, 921 F.2d 1233, 1235 (11th Cir. 1991); Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (holding that substantial evidence is defined as "more than a scintilla but less than a preponderance" and consists of "such relevant evidence as a reasonable person would accept as adequate to support a conclusion[]").   In determining whether substantial evidence exists, a court must view the record as a whole, taking into account evidence favorable, as well as unfavorable, to the Commissioner's decision.  Chester v. Bowen, 792 F. 2d 129, 131 (11th Cir. 1986); Short v. Apfel, 1999 U.S. Dist. Lexis 10163 (S.D. Ala. 1999).

   **B.   Discussion**

   An individual who applies for Social Security disability benefits must prove his disability.   20 C.F.R. §§ 404.1512, 416.912.  Disability is defined as the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for

---

   [1]This Court's review of the Commissioner's application of legal principles is plenary.  Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987).

a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 404.1505(a), 416.905(a). The Social Security regulations provide a five-step sequential evaluation process for determining if a claimant has proven her disability. 20 C.F.R. §§ 404.1520, 416.920.[2]

In case sub judice, the ALJ determined that Plaintiff met the non-disability requirements for a period of disability and disability insurance benefits and was insured for benefits through the date of the decision. (Tr. 192-202). The ALJ found that he had not engaged in substantial gainful activity since his alleged onset date. (Id.) The ALJ concluded further, that while Plaintiff has the severe impairment of degenerative disc disease ("DDD"), it does not meet or medically equal the criteria for any of the impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1,

---

[2]The claimant must first prove that he or she has not engaged in substantial gainful activity. The second step requires the claimant to prove that he or she has a severe impairment or combination of impairments. If, at the third step, the claimant proves that the impairment or combination of impairments meets or equals a listed impairment, then the claimant is automatically found disabled regardless of age, education, or work experience. If the claimant cannot prevail at the third step, he or she must proceed to the fourth step where the claimant must prove an inability to perform their past relevant work. Jones v. Bowen, 810 F.2d 1001, 1005 (11th Cir. 1986). In evaluating whether the claimant has met this burden, the examiner must consider the following four factors: (1) objective medical facts and clinical findings; (2) diagnoses of examining physicians; (3) evidence of pain; (4) the claimant's age, education and work history. Id. at 1005. Once a claimant meets this burden, it becomes the Commissioner's burden to prove at the fifth step that the claimant is capable of engaging in another kind of substantial gainful employment which exists in significant numbers in the national economy, given the claimant's residual functional capacity, age, education, and work history. Sryock v. Heckler, 764 F.2d 834 (11th Cir. 1985). If the Commissioner can demonstrate that there are such jobs the claimant can perform, the claimant must prove inability to perform those jobs in order to be found disabled. Jones v. Apfel, 190 F.3d 1224, 1228 (11th Cir. 1999). See also Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987) (citing Francis v. Heckler, 749 F.2d 1562, 1564 (11th Cir. 1985)).

Regulations No. 4. (Id.) The ALJ found that Plaintiff's allegations regarding his limitations were not totally credible. (Id.) The ALJ concluded that Plaintiff retains the residual functional capacity ("RFC") for a full range of light work and is unable to perform any of his past relevant work ("PRW"), but is not disabled due to Medical-Vocational Guidelines Rules 202.18 and 202.19. (Id.)

The relevant evidence of record[3] reflects that Plaintiff received physical therapy at Old Shell Orthopaedic Associates, P.C. ("Old Shell") from 1995 through 2001, for a work injury which resulted in cervical and lumbar strain/pull, as well as right shoulder pain and severe bursitis of the shoulder. He received Toradol shots, had sensitive trigger points, and was prescribed Ultram. (Tr. 303-312, 325-331). Treatment records reflect that in May 1995, Plaintiff reported that he was doing "real well" regarding his "overall orthopaedic problems." (Id. at 330). He was released from care with no long term disability related to his initial 1995 injury. (Id.)

Plaintiff was next treated by Burt F. Taylor, M.D. ("Dr. Taylor") from August 1999 through February 2000, for neck and back pain. (Id. at 313-316). C-spine x-rays revealed some degenerative changes at C3-4; his bone scan was normal; his thoracic MRI was

---

[3]While the undersigned has reviewed the entire transcript, the summary of the medical evidence focuses on the evidence that was before the ALJ at the time of the decision.

within normal limits, and his chest x-rays were normal. (<u>Id</u>.) An evaluation by a rheumatologist was suggested, as was physical therapy, and Plaintiff was prescribed Lortab, Soma and Relafen. (<u>Id</u>.) Due to the strenuous and heavy exertional level of his work, Plaintiff was taken off of work at various times. (Tr. 313-316). Dr. Taylor opined that he could return to regular work duty as of February 28, 2000. (<u>Id</u>. at 313).

On July 5, 2001, Plaintiff was treated at the Mobile Infirmary Medical Center ("Infirmary") ER, for right shoulder pain and neck pain at level 7 on the 1-10 pain scale. (<u>Id</u>. at 317-324). He reported that he was not taking any medications. (<u>Id</u>.) His examination was normal but his x-rays revealed findings compatible with a mild adynamic ileus and cervical spondylosis at C3-4. (<u>Id</u>.) From January 2002 through March 2002, Plaintiff was treated at Franklin Memorial Medical Center ("Franklin") for complaints of chronic constant back pain, neck pain, chest pain, fatigue and dyspepsia. (<u>Id</u>. at 332-335). His medications included Advil, Prevacid and Zantax. (Tr. 332-335). Plaintiff reported pain ranging from levels 7-9 on the 1-10 pain scale, which he treated with Motrin, and that his pain worsened with sitting. (<u>Id</u>.) In March 2002, he was diagnosed with chronic back pain, fatigue and dyspepsia. (<u>Id</u>. at 332).

On August 5, 2002, Charles E. Hall, Jr., M.D. ("Dr. Hall") performed a consultative orthopedic examination of Plaintiff.

7

(Id. at 336-337).  Plaintiff reported that his pain was a level 8 last month and a level 7 upon exam.  (Id. at 336).  His medications included Zoloft, Tylox and Celebrex.  (Id.)  Plaintiff's exam revealed that his cervical spine ROM was within normal limits for flexion, extension and side bending.  (Tr. 336).  His lumbar ROM was limited due to pain with 10 degrees of extension and 30 degrees of flexion.  (Id.)  He had full ROM in both upper/lower extremities and his deep tendon reflexes were normal.  (Id.)  He had normal strength in both upper/lower extremities including finger grip, wrists, biceps, triceps, quadriceps and dorsiflexors but had some giveaway weakness of dorsiflexors.  (Id.)  His SLR tests were negative and his sensation was intact.  (Id.)  He had mild tenderness over his right anterior medial heel and moderate tenderness over his left anterior medial heel.  (Id.)  He also had pain with trunk twisting and axial compression of lumbar spine. (Tr. 336).  X-rays of lumbar spine, AP and lateral revealed reduced lumbar lordosis with good disc space heights with minimal lumbar spondylosis.  (Id.)

Dr. Hall diagnosed Plaintiff with a history of mechanical low back pain; a history of diffuse pain; and plantar fasciitis - left ankle greater than the right.  (Id.)  Dr. Hall concluded as follows: Plaintiff "can work eight hours a day. Would limit his lifting to 40 pounds occasionally, 20 pounds constantly.  Would limit bending to occasional, stooping to occasional and limit his

sitting, standing or walking." (Id. at 337).

On August 16, 2002, a State Agency physician assessed Plaintiff's physical residual functional capacity based upon a review of his medical records (Dr. Hall's findings) and diagnoses of history of diffuse pain and plantar fasciitis. (Id. at 339-346). He concluded that Plaintiff could perform medium level work with occasional postural limitations. (Id.) According to Dr. Hall, Plaintiff could occasionally lift/carry 50 pounds, frequently lift/carry 25 pounds, and stand/walk/sit for 6 hours total per 8 hour workday. (Tr. 339-346). He further concluded that Plaintiff has unlimited push/pull abilities, can occasionally climb, balance, stoop, kneel, crouch and crawl, and has no visual, communicative, environmental or manipulative limitations. (Id. at 341). Also on this date, a disability specialist completed a Credibility Statement in which she assigned considerable weight to Dr. Hall's August 2002 findings, and concluded that Plaintiff's allegations of symptoms were partially credible and that while the medical records showed some limitations due to pain, he is not limited to the degree he alleges. (Id. at 293-294).

From May 2002 through February 2003, Plaintiff was treated by Otis Harrison, M.D. ("Dr. Harrison"), for lumbar radiculopathy, GERD, arthritis, insomnia and depression. (Id. at 364-387). During his treatment, Plaintiff reported a number of ailments, including tenderness and low back pain, foot swelling, ankle pain,

aching bones, thoracic and lumbar pain, swelling, numbness, tingling and fatigue. (Id.) Plaintiff's December 2002 exam revealed tenderness over L-S spine and pain on ROM. (Id. at 368). During his last examination on February 14, 2003 Plaintiff reported aches and swelling in his hands and feet, tenderness over L-S spine and pain on ROM. (Tr. 364).

On December 23, 2002, Dr. Harrison completed a Physical Capacities Evaluation and Clinical Assessment of Pain form, in which he concluded that Plaintiff can lift up to 25 pounds occasionally; can occasionally carry up to 20 pounds; can frequently lift/carry up to 5 pounds; can sit/stand/walk for 2 hours at one time; cannot use hands/feet for pushing/pulling or repetitive movements; can use his hands for simple grasping and fine manipulation; and can occasionally bend, squat, crawl and reach. (Id. at 349). Dr. Harrison also opined that Plaintiff experiences pain to such an extent as to be distracting to the adequate performance of work activities, and that the side effects of his medications can be expected to be severe and to limit his effectiveness due to distraction, drowsiness and inattention. (Id. at 348). He also imposed moderate restrictions from activities around unprotected heights, moving machinery, marked changes in temperature/humidity, driving, and exposure to dust, fumes and gases. (Id. at 349).

Plaintiff was treated at the Springhill Memorial Medical

Center ER on January 11, 2003, for neck pain and lower back pain radiating to his legs for three weeks. (Id. at 351-363). His exam was normal (full ROM, no edema, no joint tenderness, no effusion, pulses equal bilaterally), except for a soft mobile mass on his neck. (Id.) His c-spine x-ray was normal and his cervical spine x-ray revealed degenerative changes with neural foraminal narrowing and mild smooth kyphotic curvature at C2-3 through C4. (Tr. 351-363). Plaintiff was diagnosed with back pain and discharged in stable condition. (Id.)

On May 12, 2003, orthopedic specialist Andre J. Fontana ("Dr. Fontana") conducted a one-time examination of Plaintiff, and concluded that he is "limited to sedentary to light type of activities." (Id. at 387-388). His exam revealed that Plaintiff has cervical, thoracic and lumbar spine pain; pain with ROM and stiffness; swelling in his hands and feet; numbness and tingling in the ulnar nerve distribution of his left hand; weakness in both hands; pain in his left foot when walking; lower back pain; he walked with a cane in his left hand; he reported that he did not cook, clean, drive or walk; and his medications included Zoloft, Tylox, Celebrex, Prevacid and sleeping medications. (Id.) Dr. Fontana noted that with respect to Plaintiff's upper extremities, he had normal deep tendon reflexes but decreased sensation in the ulnar nerve distribution in his left and right hands; 4/5 grip strength in both hands; cervical spine flexion 40-45 degrees,

extension 20 degrees and rotation 45 degrees to the right and 40 degrees to the left and lateral flexion 20 degrees to the right and left.  (Id.)  Dr. Fontana noted that Plaintiff had a soft tissue cervical mass that may be a possible tumor and recommended it be evaluated.  (Id.)  His lower extremities revealed normal deep tendon reflexes; normal sensation; good toe-heel gait; poor squatting; 5/5 motor strength; SLR 90 degrees sitting and 60 degrees supine; and lumbar spine flexion 20 degrees, extension to 10 degrees and lateral flexion 15 degrees to left and right.  (Tr. 387-388).  Dr. Fontana diagnosed Plaintiff with degenerative disc disease ("DDD") of the cervical, thoracic and lumbar spine, and mild fascia pain syndrome, and opined that he is "limited to sedentary to light type of activities."  (Id. at 388).

Also on this date, Dr. Fontana completed a Physical Capacities Evaluation ("PCE") in which he concluded that Plaintiff can sit/stand/walk for 1 hour at a time; sit for 8 hours per work day; stand for 6 hours per work day; walk for 4 hours per work day; continuously lift up to 10 pounds; frequently lift up to 25 pounds; occasionally lift up to 50 pounds; continuously carry up to 5 pounds; occasionally carry up to 25 pounds; frequently carry up to 20 pounds; use his hands for repetitive action (simple grasping, pushing/pulling arm controls and fine manipulation); use his feet for repetitive movements (pushing/pulling leg controls); frequently reach; occasionally bend, squat, climb and crawl; is totally

restricted from activities around unprotected heights; is moderately restricted from activities around moving machinery; and is mildly restricted from activities involving driving automotive equipment. (<u>Id</u>. at 389). Dr. Fontana again concluded that Plaintiff is limited to light to sedentary activities. (<u>Id</u>.)

On July 15, 2003, Plaintiff underwent MRIs at the Infirmary: his cervical spine MRI revealed a right paracentral disc protrusion at C3-4 and C4-5 impinging on cord but probably not compressing it, and bilateral foraminal stenosis at both levels but no intrinsic abnormality in the cord. (<u>Id</u>. at 390-391). Plaintiff's lumbar spine MRI revealed a moderate disc bulge at L3-4 and some degenerative changes involving the facet joints. (<u>Id</u>.)

1. **<u>Whether the ALJ erred by finding that Plaintiff retains the RFC for a full range of light work, and in doing so, failed to perform a function-by-function analysis under SSR 96-8p</u>?**

Plaintiff contends that the ALJ erred by finding that he retains the RFC for a full range of light work because the ALJ did not perform a "function-by-function" analysis of Plaintiff's physical limitations as required by SSR 96-8p,[4] and failed to set forth any RFC findings as to Plaintiff's ability to sit, stand, walk, push, pull, bend, squat, crawl or reach. RFC is a measure of

---

[4] SSR 96-8p requires an ALJ to individually assess the exertional (lifting, carrying, standing, walking, sitting, pushing, and pulling), and non-exertional (manipulative, postural, visual, communicative, and mental functions) capacities of the claimant in determining a claimant's RFC.

13

what a claimant can do despite his limitations.  20 C.F.R. §§ 404.1545, 416.945.  Determinations of RFC are for the ALJ to render, after considering all the relevant evidence regarding a claimant's remaining ability to work despite his impairments.  Id. See also 20 C.F.R. §§ 404.1527, 416.927; Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997).  According to SSR 96-8p of the Social Security Regulations, "[t]he RFC assessment must first identify the individual's functional limitations or restrictions and assess . . . [his] work-related abilities on a function by function basis . . . . Only after that may RFC be expressed in terms of exertional levels of work, sedentary, light, medium, heavy, and very heavy."  SSR 96-8p, 1996 WL 374184 (S.S.A. 1996). See also 20 C.F.R. § 404.1545(b) (requiring that a claimant's physical abilities be considered when assessing RFC, including sitting, standing, walking, lifting, carrying, pushing, pulling and manipulative or postural functions such as bending, squatting, crawling and reaching).  Moreover, the ALJ has a duty to make clear the weight accorded to the evidence and the reasons for the decision so that a reviewing court will be able to determine whether the ultimate decision was based on substantial evidence. See, e.g., Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981).

In the case sub judice, the ALJ discussed the medical evidence of record and then concluded that "the claimant retains the following residual functional capacity: light work." (Tr. 199,

14

201).  In setting forth his RFC determination, the ALJ did not list any findings regarding Plaintiff's specific functional limitations, but did note that he assigned "more weight" to examining physicians Drs. Hall and Fontana, rather than to Plaintiff's treating physician Dr. Harrison, because "they are orthopedists" and their opinions "are consistent" while Dr. Harrison is an internist and his assessment of Plaintiff's ability to perform work-related duties is "more restrictive[]".  The ALJ also assigned "some weight" to the findings of the State Agency physician because while non-examining, "those opinions do deserve some weight, particularly in a case like this in which there exist a number of other reasons to reach similar conclusions."  (Tr. 200).

While Plaintiff contends that the ALJ failed to conduct the requisite "function-by-function" analysis pursuant to 20 C.F.R. § 404.1545(b) and SSR 96-8p because he provided no specific findings in his decision as to Plaintiff's abilities to sit, stand, walk, lift, carry, push, pull, bend, squat, crawl or reach, such omission is not fatal where it is clear from the ALJ's decision that he reviewed and considered four separate assessments of Plaintiff's functional capacities – assessments which were prepared by physicians and did evaluate the above-listed abilities. See, e.g., Porter v. Barnhart, Slip Copy, 2006 WL 2641666 (S.D. Tex. 2006); Billups v. Barnhart, 322 F. Supp. 2d 1220, 1227-1229 (D. Kan. 2004); Coleman v. Barnhart, 264 F. Supp. 2d 1007 (S.D. Ala. 2003).

In concluding that Plaintiff could perform the full range of light work, the ALJ stated as follows with regard to Plaintiff's RFC:

> The undersigned notes that the treating physician's assessment of the claimant's ability to perform work-related duties was more restrictive than those of the two examining physicians. Normally, the opinion of Dr. Harrison would be given controlling weight. However, Dr. Harrison is an internist and his opinions appears to rest at least in part on an assessment of an impairment outside his area of expertise. The two examining physicians, Dr. Hall and Dr. Fontana . . . are orthopedists and their opinions concerning the claimant's limitations based on this orthopedic impairment are consistent. Therefore, their opinions were given more weight in the establishment of the claimant's residual functional capacity.
>
> . . . . The record does not contain any opinions from treating or examining physicians indicating that the claimant is disabled. The residual functional capacity conclusions reached by the physicians employed by the State agency also support a finding of "not disabled" . . . . Although those physicians were non-examining, and therefore their opinions do not as a general matter deserve as much weight as those of examining or treating physicians, those opinions do deserve some weight, particularly in a case like this in which there exist a number of other reasons to reach similar conclusions.

(Tr. 200). Accordingly, the undersigned can discern _what_ evidence the ALJ relied upon to determine Plaintiff's RFC; however, the ALJ's decision is not supported by substantial evidence because the assessments of Dr. Hall and Dr. Fontana do not support a finding that Plaintiff can engage in a full range of light work.

Social Security Regulations provide that the ability to perform a full range of light work entails lifting up to 20 pounds at a time; frequent lifting/carrying of objects weighing up to 10

pounds; standing/walking, off and on, for 6 hours per 8 hour work day, with sitting intermittently; occasional stooping; and that the ability to stand is more critical than the ability to walk.   20 C.F.R. § 404.1567(b); SSR 83-10.  See also e.g., Casher v. Halter, 2001 WL 394921, *9 (S.D. Ala. Mar. 29, 2001).  SSR 83-12 provides further, that light work does not include sit/stand option jobs. As noted supra, Dr. Hall concluded, following his examination of Plaintiff, that Plaintiff could work eight hours a day, and could lift 40 pounds occasionally and 20 pounds constantly.  (Tr. 339-346).  Dr. Hall also opined that Plaintiff would be limited to occasional bending and stooping, and that his sitting, standing, and walking should be limited.  (Id. at 337).  Because Dr. Hall's assessment does not make clear the extent to which Plaintiff is limited in these latter functional areas, the assessment does not constitute substantial evidence in support of the ALJ's decision.[5]

Dr. Fontana's assessment also fails to support the ALJ's RFC finding.  Dr. Fontana concluded that Plaintiff could sit for 8 hours, stand for 6 hours, and walk for 4 hours within an 8 hour day, and further opined that Plaintiff was limited to sitting, standing and walking in 1 hour intervals.  (Tr. 389).  He further

---

[5]The ALJ indicated that he was according some weight to the opinion of the State Agency Physician who concluded that Plaintiff can occasionally lift/carry 50 pounds, and frequently lift carry 25 pounds, can stand/walk/sit 6 hours total per 8 hour workday, and has unlimited push/pull abilities, can occasionally climb, balance, stoop, knell, crouch and crawl.  However, the non-examining State Agency Physician relied upon Dr. Hall's flawed assessment to reach his conclusion.  Moreover, he did not have the benefit of Dr. Fontana's assessment.

concluded that Plaintiff was limited to occasional bending, squatting, crawling and climbing. (Id.) Dr. Fontana also placed Plaintiff's work ability at sedentary to light. (Id.) In his decision, finding that Plaintiff could perform a full range of light work, the ALJ did not discuss this aspect of Dr. Fontana's assessment despite the fact that the latter restrictions, which limit Plaintiff to 4 hours total walking, and 1 hour intervals of sitting, standing and walking, would necessitate a position which would allow Plaintiff to alternate standing, sitting or walking, or one involving a sit/stand option. Given these latter restrictions, the ALJ erred in not discussing whether they impacted Plaintiff's ability to perform a full range of light work, or resulted in some erosion in the range of light work that Plaintiff could perform. To the extent the ALJ rejected this aspect of Dr. Fontana's assessment, he failed to set forth the reasons for doing so. Accordingly, this case is due to be reversed and remanded. Upon remand, the ALJ should re-evaluate Plaintiff's RFC in light of the functional limitations identified by Dr. Fontana. To the extent he rejects some of the findings, particularly those relating to Plaintiff's ability to stand, sit, and walk, he shall set forth the reasons for doing so.

Additionally, the ALJ relied exclusively upon the Grids to find that Plaintiff is not disabled. However, where a plaintiff is unable to perform a full range of light work, or where the

plaintiff has difficulty performing the manipulative or postural functions of some work such as reaching, handling, stooping, climbing, etc., then a plaintiff has a nonexertional impairment, and under such circumstances, a vocational expert is the preferred method of determining if the plaintiff can perform specific work that exists in the national economy. <u>See</u> 20 C.F.R. §§ 404.1569a(c), 416.969a(c) (2007). <u>See</u>, <u>e.g.</u>, <u>Collins v. Apfel</u>, 2000 WL 206482 (S.D. Ala. Feb. 9, 2000); <u>Foote v. Chater</u>, 67 F.3d 1553 (11th Cir. 1995); <u>Swindle v. Sullivan</u>, 914 F.2d 222 (11th Cir. 1990); <u>Welch v. Bowen</u>, 854 F.2d 436 (11th Cir. 1988); <u>MacGregor v. Bowen</u>, 786 F.2d 1050 (11th Cir. 1986); <u>Gibson v. Heckler</u>, 762 F.2d 1516 (11th Cir. 1985). Therefore, to the extent the ALJ determines that Plaintiff can not perform the full range of work, a vocational expert should be utilized to determine if jobs exist in the national economy that Plaintiff can perform.

## V.   <u>Conclusion</u>

For the reasons set forth, and upon careful consideration of the administrative record, oral argument and memoranda of the parties, it is **RECOMMENDED** that the decision of the Commissioner of Social Security, denying Plaintiff's claim for period of disability, disability insurance benefits and supplemental security income, be **REVERSED** and **REMANDED.**

The attached sheet contains important information regarding objections to this <u>Report and Recommendation</u>.

**DONE** this **25**th day of **May, 2007.**

**/s/SONJA F. BIVINS**
**UNITED STATES MAGISTRATE JUDGE**

### MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS
### AND RESPONSIBILITIES FOLLOWING RECOMMENDATION
### <u>AND FINDINGS CONCERNING NEED FOR TRANSCRIPT</u>

1.   **<u>Objection</u>**.  Any party who objects to this recommendation or anything in it must, within ten days of the date of service of this document, file specific written objections with the clerk of court.  Failure to do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the magistrate judge.  <u>See</u> 28 U.S.C. § 636(b)(1)(c); <u>Lewis v. Smith</u>, 855 F.2d 736, 738 (11th Cir. 1988).  The procedure for challenging the findings and recommendations of the magistrate judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides, in part, that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a "Statement of Objection to Magistrate Judge's Recommendation" within ten days after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection. The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made. It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection. Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.   **<u>Opposing party's response to the objection.</u>**  Any opposing party may submit a brief opposing the objection within ten (10) days of being served with a copy of the statement of objection.  Fed. R. Civ. P. 72; SD ALA LR 72.4(b).

3.   **<u>Transcript (applicable where proceedings tape recorded)</u>**.  Pursuant to 28 U.S.C. § 1915 and Fed.R.Civ.P. 72(b), the magistrate judge finds that the tapes and original records in this action are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

                              **/s/SONJA F. BIVINS**
                              **UNITED STATES MAGISTRATE JUDGE**